UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION |
| | ) | |
| LONNELL G. GLOVER | ) | NO. 08-CR-110 (TFH) |
| | ) | |

**DEFENDANT GLOVER'S SUPPLEMENT ON SPEEDY TRIAL PREJUDICE**

NOW COMES Defendant LONNELL G. GLOVER, by and through undersigned counsel, and files this supplemental memorandum on the issue of whether the speedy trial dismissal, ordered by this Court on April 30, 2009, should be entered with or without prejudice.

**A. The Speedy Trial Act**

This Court has already ruled that dismissal of this action is required due to non-compliance with the Speedy Trial Act, 18 U.S.C. § 3161.  As noted in 18 U.S.C. § 3162(a)(1):

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

An evaluation of these pertinent factors follows.

**1. Seriousness of the Offense**

The one-count indictment in this case charges the defendants with a conspiracy to distribute in excess of five kilograms of cocaine.  Ordinarily, that type of charge might be considered a serious offense, but these are not ordinary circumstances.  This indictment is, as the Government itself admits, a mere "related" case. [Docket #35, at 1].  In reality, the Government appears to have carved up its drug conspiracy cases emanating from the wiretap evidence it

obtained against Mr. Glover into several separate cases, as part of an effort to ensure at least two separate bites at the apple to obtain a conviction and stiff sentence against him. Such a separation may or may not be technically permissible, but it is not necessarily a strategy this Court is obliged to encourage. More pointedly, as this Court knows, Mr. Glover already faces a Sentencing Guideline range of 360 months-life on his conviction in Criminal Action No. 07-153. The seriousness of the instant offense, when viewed in the context of its *incremental* seriousness atop the sentence that Mr. Glover already is facing in his other case, is simply negligible. Indeed, this case appears to be a sort of "insurance" prosecution against Mr. Glover, designed to keep him incarcerated even if he somehow later prevails in his appeal from the PCP conviction.

Stated another way, suppose that, rather than bringing two separate, related cases, the Government had chosen to combine these two cases into one – or to consolidate the two cases for trial. If that had occurred, it is likely that Mr. Glover's *combined* sentencing exposure still would have been 360 months-life. And if such a joint trial had been scheduled, and if then, on the eve of the joint trial, the Government made a strategic decision to dismiss the cocaine conspiracy count, and to proceed to trial only on its PCP case (since that conviction alone would yield a sentencing range of 360 months-life anyway), it is unlikely anyone would have protested, "My God, I can't believe they are dropping thate *serious offense*!" Rather, the cocaine conspiracy count would have been understood in the context of what it truly is – a mere back-up charge, designed to help the Government win a conviction in the event that it could not win on the PCP charges. And today, the instant offense is even less important, for the Government has already won (at least at the trial level) on its PCP charges against Mr. Glover.

In its latest filing, in fact, the Government admits that it already did something very similar in Criminal Action No. 07-153 – it decided for strategic reasons simply to drop its heroin

2

conspiracy charges against Mr. Glover. [Docket #41, at 4]. In short, a dismissal here would drop an offense that is no more "serious" than what the Government has already chosen to drop itself.

A look at the instant indictment itself also undermines any suggestion that this is a particularly serious offense. As the Government's latest filing reveals, this is not a case involving the breakup of a longstanding cocaine ring. By its own account, the instant conspiracy involves an alleged attempt by Mr. Glover to "expand his product-line." [Docket #41, at 2]. The conspiracy apparently involves the transportation of cash in a microwave to the Bahamas – all of which was intercepted and seized by law enforcement authorities. While the Government tries to guesstimate how many kilograms of cocaine this $175,000 might have purchased, the reality is that no cocaine was ever bought. At most, this is a conspiracy that ended in an attempt. No cocaine was ever sold or delivered to anyone, and none ever made its way into the United States. And the wrongdoers have already lost their $175,000.

In any event, the Government certainly never treated this offense as particularly "serious." Although the Government long ago had the same wiretaps from Mr. Glover's truck in hand, which formed the basis of all three prosecutions, it waited almost a year after the other two indictments had been brought to file this new case. It then let this new case languish thereafter, waiting some five months just to arraign Mr. Glover on this indictment, even though he was in the custody of the D.C. Jail at the time, and was brought into this court for Status Conferences on his other criminal case. The Government placed this case behind all the others, and paid it little or no mind, even as months went by with no progress. In short, it treated this case for exactly what it was – a mere back-up prosecution.

While cocaine conspiracy cases can certainly be serious offenses, the instant charge should be viewed in the context of the Government's overall efforts against Mr. Glover. If Mr.

Glover's PCP conviction ultimately stands, for example, this case against him does not involve a "serious offense" – the case against him is, instead, essentially a complete waste of time and effort by all involved, since these facts instead could simply be presented at his PCP sentencing, without the need for another, separate prosecution with full-blown hearings and another trial.

### 2. Facts and Circumstances of the Case Which Led to the Dismissal

The indictment in this case was returned more than a year ago, on April 17, 2008. As the Government concedes, Mr. Glover was in custody and available at that time for immediate arraignment. As Mr. Glover has noted in his motion adopting this speedy trial challenge, [Docket #37], his counsel even inquired about the status of this case in June 2008 – a claim consistent with the fact that Jonathan Wright was arrested in this case on June 18, 2008; yet the Government denied any new indictment. Mr. Glover was not arraigned until September 3, 2008.

The Government has conceded that all of the defendants in this case (including Mr. Glover) should have been arraigned by July 25, 2008, and that the clock for Speedy Trial Act purposes therefore should be properly construed as starting on that date. [Docket #35, at 3-4]. What this means is that it now appears that there were actually far more than the 111 days of non-excludable time calculated by Defendant Robbins. In fact, the Government's concession means that the delays in this case may well have been *nearly double* the maximum amount of 70 non-excludable days allowable under the Speedy Trial Act.[1]

---

[1] Defendant Robbins' March 12, 2009 speedy trial motion counted 230 days that had elapsed since his July 25, 2008 arraignment date. [Docket #29, at 9]. Of those days, he calculated approximately 119 excludable days (apparently about 40 days between his July 25 arraignment date and the date the last defendant was arraigned on September 3; 3 days from September 15-18 based on a motion to transfer to CTF; 6 days from October 9-15 based on a motion for bond; 10 days from November 10-20 based on a motion for interim payments to an investigator; a combined 47 days following and based upon Wright's December 21 motion for interim payments to attorneys and Robbins' first attorney's January 8 motion to withdraw as counsel; and 16 days specifically excluded after February 25), yielding a difference (non-excludable time) of approximately 111 days. The Government's concession that all defendants should have been arraigned by July 25, however, means that the first 40 days that Robbins categorized as excludable are in fact non-excludable, rendering the length of the violation more severe.

These delays might be more understandable (though not excusable) if this case had been making progress. But the truth is that this case received no real attention from the Government at all. Despite the defendants' counsel's apparent assertion of their rights to a speedy trial at their respective arraignments, the Government never sought a determination from the Court in this case that any time should be excluded under the Speedy Trial Act. Apparently, only a single status conference was ever held, on September 18, 2008. While another was initially scheduled for October 28, it was canceled and the Government made no apparent efforts to reschedule it. Meanwhile, the only court proceeding that ensued during this period finished when Defendant Wright's motion for bond was filed on October 9 and promptly denied on October 15. After that, no court proceedings at all ensued during the remainder of October. Or in November. Or in December. Or in January. Or in February, until that month had almost expired, and a hearing was held on February 25. Just looking at this lengthy period of inaction alone – which itself far exceeds 70 days – should have put the Government on clear notice that it needed to be doing more – something – to attend to this case.

The Government's brief tries to suggest that the delays might somehow be placed at the feet of defense counsel who requested withdrawal. But if anything, such requests only helped the Government here, for Robbins' initial defense counsel's motion to withdraw, for example, afforded the Government 30 days of extra excludable time, as Defendant Robbins' motion allows.[2] The reality is that this is not a case in which a trial date was formally set and then postponed. In fact, it does not appear that any trial date was *ever* set – or ever *even requested* – by the Government. Indeed, it appears that this case essentially fell off the Government's radar

---

[2] Pointing to alleged scheduling conflicts of appointed counsel for Mr. Glover is also particularly inappropriate, since Mr. Glover has indicated a desire to hire retained counsel, which he would have accomplished long ago except for the Government's numerous forfeiture actions that have inhibited his financial capacity.

screen completely, with the Government choosing instead to focus all of its efforts on its other two related cases, while leaving this one wholly unattended.

In short, this is exactly the type of case that deserves dismissal with prejudice. The circumstances of this case that led to the dismissal are not of a type that should be allowed to recur, and the Government should be squarely reminded that indicted cases must progress.

### 3. The Impact of Reprosecution

If dismissal is granted with prejudice, and reprosecution proceeds, it will undermine the administration of the Speedy Trial Act. And it will not promote the administration of justice.

#### a. Administration of the Speedy Trial Act

The Speedy Trial Act's purposes will mean little or nothing if prosecutors come to believe that their provisions can be violated with impunity, and come to expect that its dismissals will always be entered without prejudice. This Court should not indulge that belief.

The Government's activities in this case exhibit a cavalier disregard for prosecutors' expected obligations to assist the Court in monitoring compliance with the Speedy Trial Act. To be blunt, it is as if no monitoring occurred here, as if no tickler system even is in place, within the U.S. Attorney's Office. No trial date was ever sought. No ruling from the Court that would evaluate and justify excludable time was ever sought before the clock had run. When a Status Conference was postponed, no follow-up efforts to evaluate this case's "status" ever ensued. Months literally went by with the case stalled. And nobody seemed to notice or care.

Worse still is the Government's reaction once a speedy trial violation was pointed out: It first tried to suggest that separate speedy trial exclusions that had been sought and granted in *an entirely different case* might somehow be cross-applied here. And it asked that exclusions be applied retroactively, despite substantial case law disallowing retroactive application.

The Government's arguments reveal an attitude that the Speedy Trial Act is not so much a law passed by Congress and signed by the President of the United States that must be followed, but a mere technicality whose provisions can surely always be worked around and forgiven. Even now, the Government asks this Court to "reconsider" its dismissal ruling, based on what it calls "numerous oral motions" that it represents were "made at the status hearings on November 12, 2008, December 1, 2008 and February 13, 2009." [Docket #41, at 4.].

Of course, what the Government fails to point out is that *none* of these referenced status hearings ever took place *in this case*. It is as if the Government fails to recognize that this case has a separate docket of its own. Even now, in other words, even after hearing that a dismissal will be granted, the Government appears wholly oblivious to the fact that speedy trial extensions or potential extensions available in other cases do not overlap into this case. The Government's fundamental misunderstanding of the law persists, revealing no sense at all – even now – of its obligations to ensure that each case's docket is monitored and properly referenced, so that the Government can assist the Court in ensuring that important speedy trial deadlines are not missed.

This is more than mere negligence. At a minimum, it represents recklessness and a continuing failure to grasp an important statutory obligation that literally exists in every federal criminal case, which needs to be remedied. The defense submits that a wake-up call is in order, and that the administration of the Speedy Trial Act will be markedly improved by a ruling dismissing this case with prejudice, so that it is made plain that more is required, and that this Court expects prosecutors to work with the Courts in actively monitoring their case dockets, just as other prosecutors have done for decades, so that these types of problems do not recur.

### b. Administration of Justice

The administration of justice will not be disserved by a dismissal with prejudice here. At least as to Mr. Glover, this case is in fact an ideal one to dismiss with prejudice. For even if no reprosecution of this case ever occurs, society (and this Court) still currently will have the ability to fully consider an appropriate punishment against Mr. Glover for his alleged drug activities, including an established Sentencing Guideline range of 360 months-life. Allowing a reprosecution of Mr. Glover, on the other hand, will not materially advance the administration of justice, since the incremental change to his exposure will be negligible, and the cost to jurors individually and to society in general of having to endure a lengthy trial merely to establish the "insurance" prosecution the Government desires is neither necessary nor appropriate.

The Government could have consolidated this cocaine conspiracy case with the others it chose to prosecute. It chose not to do so, even though consolidation would have obviated the problems it claims it faced in having its prosecutors caught in the other trials. The Government chose not to go that route, and is entitled to make charging decisions, perhaps including a right to insist upon a separate "insurance" prosecution of this type if its internal policy decisions so dictate. But it also is not inappropriate for this Court to insist that, if multiple "related" cases are brought by the Government, and this Court's already-crowded docket is filled with mere "insurance" trials, the Government will be expected to strictly comply with its speedy trial obligations, and will face real consequences if those expectations are not met.

### B. Constitutional Due Process Violation

Defendant Robbins' adopted motion has also specifically raised, and Mr. Glover submits that this Court should also dismiss this case with prejudice based upon, constitutional speedy trial violations. Defendant Robbins has also raised additional points in support of his

constitutional claim in his latest filing [Docket #40], and Mr. Glover specifically adopts and joins in those arguments.

## **CONCLUSION**

For the reasons set forth above, Defendant Robbins' Motion to Dismiss Indictment for Lack of a Speedy Trial [Docket #29], adopted *pro se* by Mr. Glover [Docket #37], should be granted, and this Court's dismissal of this indictment should also be entered with prejudice.

                                                        Respectfully submitted,

                                                        _____/s/_____
                                                        Gregory S. Smith
                                                       D.C. Bar No. 472802
                                                       913 East Capitol Street, S.E.
                                                       Washington, D.C. 20003
                                                       (202) 460-3381

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT GLOVER'S SUPPLEMENT ON SPEEDY TRIAL PREJUDICE is being served upon counsel for all parties, including the United States, through the Electronic Case Filing system.

This 6th day of May, 2009.

                                                        _____/s/_____
                                                       Gregory S. Smith